UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EARNEST LEE HAMILTON,

                    Plaintiff,

          v.

MILLER, et al.,

                    Defendants.

Case No. C25-5511-JLR-SKV

REPORT AND RECOMMENDATION

INTRODUCTION AND BACKGROUND

Plaintiff Earnest Lee Hamilton, who proceeds pro se and *in forma pauperis* (IFP) and is currently incarcerated at Washington State Penitentiary, brings claims in this 42 U.S.C. § 1983 action associated with his allegation that he was sexually assaulted during his confinement as a pretrial detainee at Pierce County Jail. *See* Dkt. 11. Plaintiff's First Amended Complaint names as Defendants: (1) Sgt. Miller; (2) Lt. Pero; (3) Sheriff Deputy/Correction Officer Stark; (4) Sheriff Deputy/Correction Officer Hall; (5) Sgt. Aaron; (6) Lt. Graham; (7) Cameron Camillo, RN for Naphcare, Inc; and (8) seven "John Doe" or other unnamed Defendants. *See id*. It includes twenty separate claims, numbered "Claim 2" to "Claim 21," in which Plaintiff alleges the violation of his constitutional rights under the First and Fourteenth Amendments and violation of the Washington Law Against Discrimination (WLAD). *See id*.

REPORT AND RECOMMENDATION - 1

Now pending before the Court is Defendant Cameron Carrillo's[1] Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. 23, and Pierce County Defendants' FRCP 12(b)(6) Motion to Dismiss, Dkt. 26. Both motions seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions specifically seek dismissal of Claim 19, as raised against Carillo, Dkt. 23, and Claims 2-10 and 13-14, as raised against Miller, Pero, Starks, Aaron, Graham, and Hall (hereinafter collectively "Pierce County Defendants"), Dkt. 26.[2]

Plaintiff did not submit an opposition brief in response to these motions. He did submit a Motion Requesting Rule 3 application of the Prison Mail Box Rule, Dkt. 30, and Motion Requesting Leave of the Court to Amend Pleadings, Dkt. 31. The Court denied both motions, observing that the former failed to identify an opposition brief or other filing to which the prison mailbox rule would apply, and that the latter was accompanied by an improper proposed supplement to the First Amended Complaint, and was otherwise deficient in failing to comply with Local Civil Rule 15(a) and Federal Rule of Civil Procedure 8. Dkt. 34.[3]

The Court now, having considered the relevant submissions and governing law, recommends that Defendant Cameron Carrillo's Motion to Dismiss Plaintiff's First Amended

---

[1] Defendant Carillo advises that he is incorrectly named as Cameron "Camillo" in the First Amended Complaint. *See* Dkt. 23 at 3. The Court, for the remainder of this Report and Recommendation, utilizes the correct spelling of Carillo's name.

[2] The motion filed by Pierce County Defendants does not explicitly state that it is filed on behalf of Hall. *See* Dkt. 26 at 1 & 9. However, because the motion discusses and seeks dismissal of the claims raised against Hall (Claims 5 and 6), the Court construes the motion to have been filed on his behalf.

[3] The proposed supplemental pleading totaled ninety-one pages, omitted Claims 2-21 and some named Defendants, identified numerous new entities and individuals as defendants, and included, in the following order, Claims 24-30, 34, and 22-23. *See* Dkt. 31-1. The Court also previously denied as procedurally deficient a motion to amend that was not accompanied by a proposed amended pleading, and struck two earlier filed "Additional Pleadings" that identified, in total, ten additional entities and individuals as defendants and included seventeen additional claims. Dkt. 28 (citing Dkts. 13-14, 16).

REPORT AND RECOMMENDATION - 2

Complaint, Dkt. 23, and Pierce County Defendants' FRCP 12(b)(6) Motion to Dismiss, Dkt. 26, be GRANTED for the reasons set forth below.

PLAINTIFF'S ALLEGATIONS

Plaintiff alleges he was sexually assaulted in June 2023, while he was confined as a pretrial detainee at Pierce County Jail. *See* Dkt. 11 at 8-28. As addressed in the pending motions to dismiss, Plaintiff brings the following claims against Carillo and the Pierce County Defendants.

Claims 2 and 3 raise allegations against Pero. In Claim 2, Plaintiff identifies Pero as the Prison Rape Elimination Act (PREA) coordinator when Plaintiff reported his sexual assault, and alleges Pero violated his Fourteenth Amendment rights by not giving him the opportunity to identify the individuals he recalled assaulting him or to move to a different part of the jail to be "kept separate," forcing him to "live in fear of his life, future assaults, and to be antagonized by the inmates [sic] including staff, who offered the inmates condoms for future sexual assaults." *Id*. at 8. In Claim 3, Plaintiff alleges Pero violated his First Amendment rights by never taking his statement, allowing him to be kept separate, or giving him an opportunity to identify his attackers, and by "showing favoritism to the inmates that raped me." *Id*. at 9.

Claims 4 and 10 raise allegations against Stark and Aaron, respectively. In Claim 4, Plaintiff alleges that, while a Sexual Assault Nurse Examiner (SANE) conducted a sexual assault kit, Aaron advised Stark that there were pictures and a video of the sexual assault, Aaron persuaded the nurse to not complete the examination "as they laughed[,]" and Aaron told the nurse he was "hoping that the examination hadn't gotten as far as it did regarding the swabs taken for potential DNA." *Id*. at 10. Plaintiff alleges Stark violated his Fourteenth Amendment rights in failing to "intervene and provide me with due process of law." *Id*. In Claim 10,

REPORT AND RECOMMENDATION - 3

Plaintiff alleges Aaron violated his Fourteenth Amendment rights in making the above-described statements, not letting him make a complete statement while the nurse was conducting the exam, and motioning the nurse to go outside the exam room after she used cotton swabs during the examination and telling her "he had a number for her to call[.]" *Id.* at 11.

Claims 5 and 6 raise allegations against Hall.  In Claim 5, Plaintiff alleges Hall showed favoritism to other inmates and violated his Fourteenth Amendment rights when, days after he reported the sexual assault, Hall created a hostile environment, discriminated against him, and threatened his life by offering inmates "condoms to assault me sexually[,]" and left him in the unit after he asked to be removed. *Id.* at 11.  In Claim 6, Plaintiff alleges this same conduct violated the WLAD. *Id.* at 12.

Claims 7, 8, and 9 raise allegations against "John Doe # 1."  In Claim 7, Plaintiff alleges John Doe # 1, a deputy working with Hall, violated his Fourteenth Amendment rights by refusing his request to be moved after he told him he was in fear for his life and was being threatened, and "even participated in antagonizing me with the inmates who were involved in assaulting me." *Id.* at 13.  In Claim 8, Plaintiff alleges John Doe # 1 violated his First Amendment rights by not allowing him to be kept separate and "participat[ing] with [the inmates] as they threatened and antagonized me." *Id.* at 14.  In Claim 9, Plaintiff alleges John Doe # 1 violated the WLAD by showing favoritism to the inmates he recalled sexually assaulting him and refusing his request to be kept separate from those inmates. *Id.* at 15.

Claims 13 and 14 raise allegations against Graham, who Plaintiff appears to identify as Pero's predecessor as the PREA coordinator. *See id.* at 21.  In Claim 13, Plaintiff alleges Graham violated his Fourteenth Amendment rights when, after he asked to identify the inmates he recalled sexually assaulting him, Graham asked him to provide the inmates' names or

REPORT AND RECOMMENDATION - 4

locations in the jail; asked him to provide a description of the inmates after he told her he did not know their names or locations; told him the incident had already been referred to the Pierce County Prosecutor's Office despite the fact that it had not been referred at that time; and, after he met with investigators at the jail in July 2024 and "was allowed to identify only one inmate . . . after we were again placed in the same unit . . . , and only then was I allowed to get a keep separate[,]" denied his request for another opportunity to identify the other inmate involved. *Id.* at 20. In Claim 14, Plaintiff alleges Graham violated his First Amendment rights by not allowing him to make a statement or identify his attackers, and by telling him the incident had been referred to the Pierce County Prosecutor's Office. *Id.* at 21.

Finally, in Claim 19, Plaintiff alleges Carillo violated his Fourteenth Amendment rights. He alleges that, during Carillo's "morning medication distribution[,]" he reported to Carillo that he believed he was raped and was in pain, that Carillo did not provide him with any health care, and that Carillo relied on the Pierce County Sheriff's Office to provide him with health care "days after" the report. *Id.* at 26. Plaintiff further alleges that Carillo "participated in Naphcare Inc [sic] custom, practice, or policy to use unqualified, unlicensed personell [sic] to provide health services to an inmate population." *Id.*[4]

/ / /

---

[4] The First Amended Complaint also includes claims against other Defendants. Claims 11 and 12 raise allegations against the unidentified SANE nurse who responded to the sexual assault. *See* Dkt. 11 at 17-18. Plaintiff alleges the nurse violated his First and Fourteenth Amendment rights by not taking his statement or completing the examination. *Id.* Claims 15 through 18 raise allegations against John Doe #'s 2-5. Plaintiff alleges these Defendants violated his Fourteenth Amendment rights when an individual made a statement to him on July 7, 2024, "that multiple staff male and female were outside my cell enabling him to sexually assault me in June of 2023[.]" *Id.* at 22-25. Finally, Claims 20 and 21 raise allegations against John Doe # 6, the medical officer who was responsible for maintaining Plaintiff's medical records. *Id.* at 27-28. Plaintiff alleges John Doe # 6 violated his First and Fourteenth Amendment rights and state law by altering or removing records from his medical history and denying him access to review or copy those records. *Id.*

REPORT AND RECOMMENDATION - 5

LEGAL STANDARDS

A.    Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, factual allegations "that are 'merely consistent with' a defendant's liability[] . . . 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12(b)(6) motion, the Court's "review is limited to the complaint, materials incorporated by reference into the complaint, and matters of which . . . [the Court] may take judicial notice." *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1071 (9th Cir. 2021) (citing *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020)). The Court "accept[s] as true all facts alleged in the complaint and construe[s] them in the light most favorable to plaintiff[ ], the non-moving party." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (third alternation in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)). However, the Court need not "accept as true . . . matters properly subject to judicial notice, or allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

B.    42 U.S.C. § 1983

To state a § 1983 claim, a plaintiff must show he suffered a violation of rights protected by the Constitution or created by federal statute, and that the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A plaintiff must allege he suffered a specific injury as a result of the conduct of a specific defendant, and must allege an affirmative link between the injury and the defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 370-72, 377 (1976). A defendant cannot be held liable under § 1983 solely on the basis of supervisory responsibility or position. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

DISCUSSION

A.    Defendant Carillo's Motion to Dismiss

Plaintiff alleges that Carillo violated his Fourteenth Amendment rights by failing to provide him with health care after his report, and by relying on the Pierce County Sheriff's Office to provide him with care days later. Dkt. 11 at 26 (Claim 19). Plaintiff, in so doing,

REPORT AND RECOMMENDATION - 7

appears to allege Carillo's deliberate indifference to a serious medical need.  The Court also considers Carillo's argument that, in alleging Carillo participated in a Naphcare Inc. custom, practice, or policy to use unqualified, unlicensed personnel to provide health services to an inmate population, *see id*., Plaintiff fails to state a claim of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

        1.      <u>Deliberate Indifference to a Serious Medical Need</u>:

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  The right to adequate medical care while in pretrial detention is guaranteed under the Fourteenth Amendment.  *See Gordon v. Cnty. Of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).  *See also Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979) (the Eighth Amendment's proscription against cruel and unusual punishment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment).  Claims alleging a violation of this right are evaluated under an objective deliberate indifference standard.  *Gordon*, 888 F.3d at 1124-25.  "Demonstrating deliberate indifference requires a substantial showing." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021).  Specifically, a pretrial detainee must show (1) the defendant acted intentionally with respect to the provision of inadequate medical care, (2) the inadequacies in care put the pretrial detainee at substantial risk of suffering serious harm, (3) a reasonable official in the defendant's shoes would have appreciated the substantial risk of harm, (4) the defendant did not take reasonable available measures to abate or mitigate the risk of harm and (5) the defendant's failure to take such measures caused the plaintiff harm.  *Gordon*, 888 F.3d at 1125.

REPORT AND RECOMMENDATION - 8

A pretrial detainee must show a defendant's conduct was "objectively unreasonable", requiring a plaintiff to "'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). "Neither mere lack of due care, nor an inadvertent failure to provide adequate medical care, nor even medical malpractice, without more, is sufficient." *Fraihat*, 16 F.4th at 636 (cleaned up and quoted sources omitted). Likewise, a mere difference of opinion as to medical treatment does not suffice to establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Plaintiff does not set forth facts showing Carillo took intentional acts with respect to his medical care, that those actions put Plaintiff at substantial risk of suffering serious harm, that a reasonable official would have appreciated that risk, that Carillo failed to take measures to mitigate the risk, and that his failure to do so caused Plaintiff harm. Plaintiff alleges only that Carillo did not provide him with care at a time when Carillo was engaged in distributing medications to inmates at the jail, and that Plaintiff received care days after his report to Carillo. *See* Dkt. 11 at 26. However, a mere delay of treatment, standing alone, does not suffice to state a claim of deliberate indifference; the inmate must show the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (1985) (citation omitted). Plaintiff makes no such allegation and his claim of deliberate indifference is properly dismissed for failure to state a claim on which relief may be granted.

2.     <u>Municipal Liability</u>:

A municipality or other local governmental unit can be sued as a "person" under § 1983. *Monell*, 436 U.S. at 691-94. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't*

REPORT AND RECOMMENDATION - 9

*of State Police*, 491 U.S. 58, 71 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Monell*, 436 U.S. at 691-94. A municipality may be held liable under § 1983 only when a "policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

In this case, the First Amended Complaint does not name a municipality as a defendant or specify that a claim is brought against Carillo in his official capacity. *See* Dkt. 11. Plaintiff, at most, alleges that Carillo participated in a custom, practice, or policy of Naphcare, Inc. to use unqualified, unlicensed personnel to provide health services to inmates. *See id*. at 26. Moreover, even assuming Plaintiff seeks to allege municipal liability, his allegation does not suffice to state a claim. As an initial matter, and as discussed above, Plaintiff fails to set forth facts supporting a claim that Carillo violated a constitutional right. Nor does he set forth any facts regarding the alleged custom, practice, or policy at issue, or explain how that policy served as the moving force behind the alleged constitutional violation. Plaintiff's assertion is vague and conclusory, and therefore insufficient to state a claim on which relief may be granted.

B.      Pierce County Defendants' Motion to Dismiss

Plaintiff alleges Pierce County Defendants violated his First and Fourteenth Amendment rights and violated the WLAD. The Court addresses these claims in turn.

1.      First Amendment Claims:

Pretrial detainees, like prisoners, "retain[] those First Amendment rights that are not inconsistent with [their] status as a prisoner or with the legitimate penological objectives of the

REPORT AND RECOMMENDATION - 10

corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  They may invoke their rights under the First Amendment "where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

An inmate's First Amendment rights include, for example, the right to file prison grievances and to pursue litigation.  *See id*.  Also, when an inmate attempts to use a grievance process or other administrative procedure, files a civil rights action, or engages in other constitutionally protected conduct, the First Amendment precludes prison officials from retaliating.  *See id*.  A retaliation claim is comprised of the following elements:  "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that [inmate's] protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567-68).

Plaintiff alleges Pero, John Doe #1, and Graham violated his First Amendment rights. *See* Dkt. 11 at 9 (Claim 3), 14 (Claim 8), and 21 (Claim 14).  He specifically alleges that these Defendants did not take his statement or allow him to identify or be kept separate from his attackers, and that they showed "favoritism" to his attackers, joined his attackers in threatening and antagonizing him, and/or told him the assault had been referred to the prosecutor's office at a time when it had not been referred.  *Id*.

Plaintiff fails to state a facially plausible claim under the First Amendment.  He does not allege that Defendants prevented him from reporting the sexual assault.  He, instead, appears to allege deficiencies in their responses to his report.  Further, his allegations both as to those deficiencies and as to Defendants' engagement in favoritism and threatening and antagonizing

REPORT AND RECOMMENDATION - 11

behavior are vague and unaccompanied by any factual detail. They do not suffice to state a claim that Defendants violated Plaintiff's First Amendment rights by preventing him from engaging in constitutionally protected conduct, or by taking adverse action against him because he reported the sexual assault, resulting in a chilling effect on the exercise of his First Amendment rights. Plaintiff, in fact, alleges that he continued to exercise his rights by repeatedly seeking to identify his attackers, move out of his unit, and move forward with the investigation into his report. *See, e.g.*, Dkt. 11 at 19 (describing his request to identify attackers "[o]n multiple occasions", his desire to be "more pro-active with the investigation[,]" his July 2024 meeting with a Pierce County Prosecutor, and his subsequent ability to identify one of the attackers and then "get a keep separate."). Plaintiff, for these reasons, fails to state a claim under the First Amendment.

2.      Fourteenth Amendment Claims:

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from jail conditions or restrictions that amount to punishment. *Olivier v. Baca*, 913 F.3d 852, 857-58 (9th Cir. 2019) (citing *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008)). The right to due process includes the right to be free from violence from other inmates. *Castro*, 833 F.3d at 1067. A failure to protect claim is evaluated under an objective deliberate indifference standard. *Id*. at 1067-71. To state a claim, a plaintiff must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1071.

REPORT AND RECOMMENDATION - 12

Pierce County Defendants construe Plaintiff's Fourteenth Amendment claims as alleging the failure to investigate and the refusal to move him out of his unit. *See* Dkt. 26 at 6-9. The Court therefore construes Plaintiff's allegations within that same framework.

a.      Failure to investigate:

Plaintiff alleges Pero failed to provide him the opportunity to identify the individuals he recalled sexually assaulting him, Dkt. 11 at 8 (Claim 2), that Graham also interfered with or deprived him of that opportunity and told him the incident had already been referred to the prosecutor's office despite the fact that it had not been referred at that time, *id*. at 19-20 (Claim 13), that Aaron did not let him make a complete statement while a nurse conducted a sexual assault examination and persuaded the nurse to not complete the exam, *id*. at 11 (Claim 10), and that Stark failed to intervene to stop Aaron, *id*. at 10 (Claim 4). Plaintiff, in other words, appears to allege these Defendants violated his constitutional rights by failing to adequately investigate and/or impeding the investigation into his report of a sexual assault.

While pretrial detainees have a right to be free from violence under the Fourteenth Amendment, they do not have a constitutionally protected interest in the way in which jail officials handle their complaints. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (because inmates do not have "a separate constitutional entitlement to a specific prison grievance procedure[,]" the failure to properly investigate or process a grievance does not state a claim) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). In this case, the facts as stated by Plaintiff show that an investigation occurred and that it included a sexual assault examination by a nurse, multiple requests that Plaintiff provide information that would allow for the identification of those responsible for the assault, and, at some point, a referral to a prosecutor. *See, e.g.,* Dkt. 11 at 10, 16, 19-20. While asserting deficiencies in the investigative process,

REPORT AND RECOMMENDATION - 13

Plaintiff fails to state a facially plausible claim under the Fourteenth Amendment. He does not, for example, identify any injury that occurred as a result of the challenged conduct or provide factual detail allowing for an understanding as to how Defendants could be said to have caused or personally participated in causing the harm alleged. Plaintiff's allegations are vague and conclusory, and are therefore insufficient to state a claim on which relief may be granted.

b.    Failure to keep separate or otherwise protect from harm:

Plaintiff alleges that Pero, John Doe # 1, and Graham refused his requests to move out of his unit and be kept separate from the inmates he recalled sexually assaulting him. Dkt. 11 at 8 (Claim 2), 13 (Claim 7), and 19-20 (Claim 13). He also alleges that, days after he reported the sexual assault, Hall created a hostile environment, discriminated against him, and threatened his life by offering inmates "condoms to assault me sexually" and leaving him in the unit after he asked to be removed, *id.* at 11 (Claim 5), and that John Doe #1 "even participated in antagonizing me with the inmates who were involved in assaulting me[,]" *id.* at 13 (Claim 7). He alleges that this conduct left him in fear for his life and the threat of being sexually assaulted again. *See id.*

Plaintiff's allegations fail to state a claim. As Pierce County Defendants observe, Plaintiff does not allege that Defendants' acts or omissions caused him to be assaulted. Plaintiff instead points to his fear of a future assault. However, it is not clear that that fear was anything more than speculative. "[S]peculative and generalized fears of harm at the hands of other [inmates] do not rise to a sufficiently substantial risk of serious harm[.]" *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted). *See also Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (a "mere suspicion that an attack will occur" is not enough to support a cognizable claim) (citation omitted). Further, allegations of verbal harassment and abuse,

REPORT AND RECOMMENDATION - 14

without more, do not suffice to state a cognizable claim. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Karanja v. Warden*, C09-5391, 2009 WL 2473669, at *2 (W.D. Wash. Aug. 6, 2009).

Nor is it clear from Plaintiff's allegations that he was, in fact, deprived of the opportunity to be kept separate from inmates he recalled sexually assaulting him or otherwise placed at substantial risk of suffering serious harm. For example, Plaintiff alleges that he was asked for the inmates' names or locations in the jail and was unable to provide that information, but that, after he met with investigators and identified one inmate, he was allowed to be kept separate from that inmate. *See* Dkt. 11 at 19-20. The facts, as stated, do not suffice to state a claim that Defendants made an intentional decision with respect to the conditions of Plaintiff's confinement, that that decision put him at substantial risk of suffering serious harm, that Defendants failed to take reasonable measures to abate that risk, and that, by not taking those measures, they caused him injury. Plaintiff's allegations lack sufficient factual detail, are conclusory, and are therefore insufficient to state a claim on which relief may be granted.

3.      WLAD Claims:

Plaintiff alleges Hall and John Doe #1 violated the WLAD. *See* Dkt. 11 at 12 (Claim 6) and 15 (Claim 9). Specifically, he asserts that they violated the WLAD by showing favoritism to other inmates after he reported his sexual assault, and by engaging and participating in threatening and antagonizing behavior.

The WLAD confers a right to be free from discrimination based upon one's status as a member of a protected class. *See generally* RCW 49.60. It does not, however, provide for a freestanding claim of discrimination. A WLAD claim requires a showing that (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public

accommodation, (3) the defendant discriminated against the plaintiff by not treating the plaintiff in a manner comparable to the treatment provided to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination. *Floeting v. Grp. Health Coop.*, 192 Wn. 2d 848, 853, 434 P.3d 39 (2019) (citing *Fell v. Spokane Transit Auth.*, 128 Wn. 2d 618, 637, 911 P.2d 1319 (1996)).

Pierce County Defendants argue that, in alleging Hall and John Doe #1 violated his WLAD "rights as a sexual assault survivor[,]" Dkt. 11 at 12, Plaintiff fails to state a claim because the WLAD does not list sexual assault survivors as a protected class. *See* RCW 49.60.030(1) (providing for the "right to be free from discrimination because of race, creed, color, national origin, citizenship or immigration status, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability"). However, the Court finds no need to consider this argument for the reason set forth below.

As previously found by this Court, a jail is not a place of public accommodation subject to the WLAD. *See, e.g.*, *Picciano v. Clark Cnty.*, C20-06106-DGE, 2022 WL 1624717, at *2-3 (W.D. Wash. May 23, 2022) (agreeing with prior decisions from this Court and the Eastern District of Washington) (citing, *inter alia*, *Skylstad v. Washington*, C18-1636-JCC-BAT, 2019 WL 919624 (W.D. Wash. Jan. 14, 2019), *report and recommendation adopted*, 2019 WL 917400 (W.D. Wash. Feb. 22, 2019)), *granting motion for reconsideration on other grounds*, 2022 WL 3346647 (W.D. Wash. Aug. 12, 2022). Accordingly, even if Plaintiff could show he fell within a protected category and suffered discrimination because of that status, his WLAD claims would not be actionable. Plaintiff's WLAD claims are therefore properly dismissed.

/ / /

REPORT AND RECOMMENDATION - 16

CONCLUSION

The Court, in sum, recommends that Defendant Cameron Carrillo's Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. 23, and Pierce County Defendants' FRCP 12(b)(6) Motion to Dismiss, Dkt. 26, be GRANTED, and that Claims 2-10, 13-14, and 19 be DISMISSED.  The Court recommends that Claims 6 and 9, which allege violation of the WLAD, be dismissed with prejudice, but that the remaining claims addressed in this Report and Recommendation be dismissed without prejudice.  *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'") (quoted source omitted).  The Court further recommends that, upon resolution of this Report and Recommendation and any objections, the Court set a deadline for the filing of any motion to amend and provide that any such motion both comply with LCR 15 and not exceed forty pages in length.  A proposed order accompanies this Report and Recommendation.

OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed.  Responses to objections may be filed by **the day before the noting date**.  If no timely objections are filed, the matter will be

/ / /

/ / /

REPORT AND RECOMMENDATION - 17

ready for consideration by the District Judge on **March 25, 2026**.

Dated this 4th day of March, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18